NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3813
_____

FRANKLYN RAFAEL GONZALEZ-RAMIREZ

v.

SECRETARY OF THE  U.S. DEPARTMENT OF HOMELAND SECURITY;
DIRECTOR OF THE U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE);
GARY MEAD, as Executive Associate Director for Enforcement and Removal
Operations, ICE; JOHN TSOUKARIS, as Field Office Director for ICE at the Elizabeth
Detention Center; FEDIRICO MADERA, as Assistant Field Office Director for ICE at
the Elizabeth Detention Center; MARCOS CASTRO, as Detention Officer and Group
Supervisor, ICE; ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA;
JUAN P. OSUNA, as Director of the Executive Office for Immigration Review; BRIAN
M. O'LEARY, as Chief Immigration Judge within the U.S. Department of Justice (DOJ);
MIRLANDE TADAL, as Immigration Judge within DOJ, located at the Elizabeth
Detention Center; ORLANDO RODRIGUEZ, as Warden of the Elizabeth Detention
Center, Corrections Corporation of America under contract with ICE

ORLANDO RODRIGUEZ,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-12-cv-02978)
District Judge: Hon. Jose L. Linares
_____

Submitted under Third Circuit LAR 34.1(a)
June 14, 2013

Before: SCIRICA, HARDIMAN and ALDISERT, Circuit Judges.

(Opinion Filed: June 17, 2013)

OPINION OF THE COURT

ALDISERT, Circuit Judge.

Appellant Orlando Rodriguez, Warden of the Elizabeth Detention Center in New Jersey, appeals from the judgment of the U.S. District Court for the District of New Jersey granting a writ of habeas corpus to Franklyn Rafael Gonzalez-Ramirez, a citizen and native of the Dominican Republic and legal permanent resident of the United States.[1] The Immigration and Nationality Act provides that "[t]he Attorney General shall take into custody any" deportable alien who has committed a crime specified by statute "when the alien is released" from custody for that crime. 8 U.S.C. § 1226(c)(1). Under the Act, these aliens must be held without possibility of release on bond during the pendency of their removal proceedings; this is referred to as "mandatory detention." See 8 U.S.C. § 1226(c)(2). The District Court held that for the Government to exercise "mandatory detention" authority under § 1226(c), it must detain aliens immediately upon their release from custody. Because the Government failed to immediately detain Gonzalez-Ramirez upon his release from state custody, but rather waited nearly four years, the District Court concluded that he could not be held in "mandatory detention" and that he was eligible for an individualized bond hearing.

---

[1] The District Court dismissed without prejudice the petition for writ of habeas corpus as to all named Respondents except Rodriguez, Warden of the Elizabeth Detention Center where Gonzalez-Ramirez was being held. Rodriguez is represented on appeal by counsel from the Department of Justice; for ease of reference we will refer to the Government as the party appealing from the District Court's judgment.

Subsequent to the District Court's decision here, this Court held in <u>Sylvain v. Attorney General of the United States</u>, 714 F.3d 150 (3d Cir. 2013) that the Government does not lose its § 1226(c) "mandatory detention" authority if it fails to detain an alien immediately upon release from state custody. Applying this teaching of our Court, which was not yet available to the District Court in these proceedings, we will reverse the District Court's judgment.

I.

Because we write primarily for the parties, who are familiar with the facts and proceedings in this case, we will revisit them only briefly.

Gonzalez-Ramirez is a citizen and native of the Dominican Republic and a legal permanent resident of the United States. On November 26, 2008, Gonzalez-Ramirez pleaded guilty in New York state court to attempted criminal sale of cocaine. He was never incarcerated subsequent to the conviction, but was sentenced to five years' probation. In 2012, the Department of Homeland Security issued a Notice to Appear charging Gonzalez-Ramirez with removability as a result of his 2008 New York conviction, and U.S. Immigration and Customs Enforcement ("ICE") officers arrested him pursuant to an administrative warrant on March 14, 2012 and detained him at the Elizabeth Detention Center in New Jersey. After numerous custody hearings, an Immigration Judge determined that he was both removable and subject to "mandatory detention" based on his 2008 conviction.

Gonzalez-Ramirez filed a petition for writ of habeas corpus on May 17, 2012, arguing that he could not be subject to "mandatory detention" because: (1) his 2008 conviction resulted in probation rather than incarceration or detention, meaning that there was no "release" from custody for the Government to act upon pursuant to § 1226(c)(1),

and (2) even assuming that there was a "release" from custody, the Government failed to detain him immediately upon release as required by § 1226(c)(1). The District Court determined that it was unnecessary to decide whether there was a "release," because the Government's failure to immediately detain Gonzalez-Ramirez precluded its use of "mandatory detention" under § 1226(c)(1). Accordingly, the District Court granted Gonzalez-Ramirez's petition for a writ of habeas corpus and issued an order requiring an Immigration Judge to provide Gonzalez-Ramirez with an individualized bond hearing. Gonzalez-Ramirez was released on bond. The Government appeals.[2]

## II.

Applying the teachings of Sylvain, we conclude that Gonzalez-Ramirez was subject to "mandatory detention" under § 1226(c), notwithstanding the delay preceding his detention by the Government, and that therefore he was not eligible for a bond hearing.

Section 1226(c) mandates detention of specified criminal aliens without any possibility of release on bond or conditional parole during removal proceedings. It provides that "[t]he Attorney General shall take into custody" any deportable alien who has committed certain crimes "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1).

## A.

_____

[2] The District Court had jurisdiction under 28 U.S.C. § 2241(a), and we have jurisdiction under 28 U.S.C. § 1291.

In Sylvain, an alien challenged the Government's authority to subject him to "mandatory detention" without bond pursuant to § 1226(c), arguing that the Government's failure to detain him immediately upon his release from prior custody eliminated its authority to impose "mandatory detention," and the district court agreed. See 714 F.3d at 153. This Court reversed the judgment of the district court and held that the alien was subject to "mandatory detention" because "even if the statute calls for detention 'when the alien is released,' and even if 'when' implies some period of less than four years, nothing in the statute suggests that officials lose authority if they delay." Id. at 161. Accordingly, the Government here did not lose its authority to subject Gonzalez-Ramirez to "mandatory detention" by virtue of the delay between his release and detention.

## B.

The second issue—whether there was a "release" as required for detention under § 1226(c)—need not unduly detain us. Before the District Court, Gonzalez-Ramirez contended that he could not be subject to "mandatory detention" under § 1226(c) because he was never incarcerated nor detained in state custody *after* his 2008 conviction, but rather he was sentenced to five years' probation. He contends, therefore, that there was no "release" as required by § 1226(c). The Government responded by arguing that Gonzalez-Ramirez was at one point in pre-conviction custody following his 2007 arrest in New York, and that release from pre-conviction custody was sufficient to trigger "mandatory detention." The District Court decided not to address this threshold issue because it concluded that the Government lost its "mandatory detention" authority when it failed to act immediately.

In Sylvain we addressed a similar argument. Sylvain received a "conditional discharge" after a conviction for a drug possession offense. Although he did not raise the argument before the district court, he argued before this Court that the "conditional discharge" did not qualify as a release. In rejecting this contention we said:

> [Sylvain] claims that the conditional discharge following his 2007 conviction was not a "release []" within the meaning of the "when . . . released" clause. But Sylvain never raised this argument in the District Court. See Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 249 (3d Cir. 2013) ("We generally refuse to consider issues that the parties have not raised below."). In any event, his release from the 2007 arrest that led to his conviction and conditional discharge certainly fulfilled the release requirement, see In re Kotliar, 24 I. & N. Dec. 124, 125 (B.I.A. 2007); In re West, 22 I. & N. Dec. 1405, 1410 (B.I.A. 2000)—to say nothing of whether the conditional discharge did the same.

Sylvain, 714 F.3d at 161. The parties dispute the relevance of this portion of the Sylvain opinion. The Government contends that Sylvain "held that release from a pre-conviction arrest fulfilled the release requirement of 8 U.S.C. § 1226(c)." Government's Apr. 24, 2013 Rule 28(j) Letter at 2. Gonzalez-Ramirez contends that this language should be treated as non-binding dicta, because the "Court actually held that Sylvain had failed to raise the issue of pre-conviction release before the District Court, and it therefore refused to consider the issue." Gonzalez-Ramirez's May 14, 2013 Rule 28(j) Letter at 1. We disagree with Gonzalez-Ramirez's contention that the Sylvain Court refused to consider whether a pre-conviction arrest and release satisfied the release requirement. Although the Court noted that Sylvain's argument was first raised on appeal, it considered the argument and rejected it, citing two decisions of the Board of Immigration Appeals in support of its conclusion. Accordingly, we conclude that because Gonzalez-Ramirez was released from pre-conviction custody following his arrest, he was subject to "mandatory detention."

6

III.

In Sylvain, we noted that reversing the district court's judgment "effectively denies Sylvain's original habeas petition and thus makes him ineligible for a bond hearing under § 1226(a). Although Sylvain has already received such a hearing and was released on bond, our holding sets aside that proceeding." 714 F.3d at 161 n.12. We follow that approach here, and our reversal of the District Court's judgment both denies Gonzalez-Ramirez's habeas petition and sets aside his bond proceeding.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. The judgment of the District Court will be REVERSED.